286 So.2d 228 (1973)
CITY OF BARTOW, a Florida Municipal Corporation, et al., Appellants,
v.
The Honorable James L. RODEN, As Tax Assessor of Polk County, Florida, et al., Appellees.
No. 73-150.
District Court of Appeal of Florida, Second District.
December 5, 1973.
Monterey Campbell, of Campbell & Dunlap, Bartow, for appellants.
Michael D. Martin, of Martin & Martin, Lakeland, for appellees.
GRIMES, Judge.
This is an appeal from a final judgment which upheld the levy of county real estate taxes against certain property within a municipally owned airport complex.
In 1941, the City of Bartow acquired approximately 920 acres of land outside its corporate limits and leased the property to the United States Government the following year. Through purchase and condemnation, the Government acquired additional acreage adjacent to the original tract. During World War II, the Government operated an airbase on the entire property and erected structures and improvements thereon in connection with the aviation training. After the war, the Government surrendered its lease and quitclaimed the adjacent property to the City with restrictions which provided that the land and the structures could be used only for public airport purposes.
*229 Since that time, the City has operated an airport on the property under the administration of the Bartow Airport Authority (Authority). Commencing in 1961, with the consent of the Federal Aviation Administration, a portion of the property not directly involved with aviation has been leased to governmental, quasi-governmental and private interests. All of the income derived from the leases is used by the Authority.
In 1970, for the first time, the Polk County Tax Assessor assessed that portion of the airport property leased or held out for lease to private interests. There was no assessment placed upon the airport, itself, or the facilities directly supporting the operation of the airport. Likewise, the assessor did not seek to tax the property leased to governmental or quasi-governmental entities.
After exhausting their administrative remedies, the City and the Authority sued for a declaration that the entire property was either exempt or immune from county ad valorem taxes. By the time of the trial, the 1971 taxes were also in issue. The lower court ruled that the property leased or held out for lease to private interests was subject to taxation.
Article VII, Section 3, of the Florida Constitution (1968), F.S.A. states:
"All property owned by a municipality and used exclusively by it for municipal or public purposes shall be exempt from taxation."
For the years in question, there was applicable statutory authority for taxing municipally owned property leased to private interests for non-public uses.[1] However, this statute could not and did not change the constitutional requirement that municipal property which is used exclusively for public purposes shall be exempt from taxation.
The Appellants contend that even though the property is leased to private profit making ventures for activities unrelated to aviation, it is still being used exclusively for a municipal or public purpose. The Appellants' argument rests upon Chapter 332, Florida Statutes, F.S.A., known as the Airport Law of 1945. The several sections of that chapter authorize municipalities to acquire land for airport purposes and validate previous acquisitions. Specifically, Section 332.03, provides:
"The acquisition of any lands for the purpose of establishing airports * * * the acquisition, establishment, construction, enlargement, improvement, maintenance, equipment, and operation of airports * * * and the exercise of any other powers herein granted to municipalities, are hereby declared to be public, governmental and municipal functions, exercised for a public purpose, and matters of public necessity, and such lands * * * and privileges acquired and used by such municipalities in the manner and for the purposes enumerated in this chapter shall be and are hereby declared to be acquired and used for public, governmental and municipal purposes and as a matter of public necessity." (Emphasis added)
Section 332.08, Florida Statutes, F.S.A. says:
"In addition to the general powers in this chapter conferred and without limitation thereof, a municipality which has established or may hereafter establish airports, * * * or which has acquired or set apart or may hereafter acquire or set apart real property for such purposes, is hereby authorized:
* * * * * *
(4) To * * * lease any property, real or personal, acquired for airport purposes and belonging to the municipality, which, in the judgment of its governing body, may not be required for aeronautic purposes, * * * *" (Emphasis added)
*230 Appellants concede that normally the question of whether property is used exclusively for a public purpose is a question of fact to be determined by the trial judge. In this instance, however, the Appellants argue that by the enactment of Chapter 332, the Legislature has made a binding factual determination that property acquired under that Chapter and used by a municipality for an airport is being used for a public purpose.[2] Appellants point out that Section 332.08 even recognizes the propriety of leasing portions of the land not then required for aeronautic purposes.
Clearly, Chapter 332 authorized and validated the acquisition of all the airport property. Further, it permitted the City to make the leases in question. Yet, we do not believe that when the Legislature stated that the use of property acquired for an airport was for a public purpose, it was determining that those portions of the airport property which might be leased to private enterprise for nonaeronautical activities would be tax exempt.
For example, a municipality might properly acquire vast acreage for the purpose of building a large airport and later find that much of the property was not required for use in connection with the maintenance of the airport. Under those circumstances, having originally acquired the property for the airport, the municipality would be authorized under Section 332.08 to lease it to private interests, but it would be an anomaly to permit such property to remain off the tax rolls. This would either have the effect of giving a preference to a lessee of airport property over his competitors or of permitting the municipality to charge more rent than the ordinary landlord because the lessee would not have to pay taxes.
In Hillsborough County Aviation Authority v. Walden, Fla. 1968, 210 So.2d 193, the Supreme Court held that property leased by an aviation authority to private interests for the conduct of business which was not indispensable to the operation of a public airport was subject to ad valorem taxation. The effect of Chapter 332 was not expressly considered in that case.
The Appellants cite Dade County v. Pan American World Airways, Inc., Fla. 1973, 275 So.2d 505, as recognizing that Chapter 332 has declared the operation of airport facilities to be a municipal function for a public purpose. Having so stated, the Supreme Court went on to hold that the use of the property by Pan-Am at Miami International Airport met the public purpose test established by Walden. Had the Supreme Court been willing to accept Chapter 332 as a legislative declaration that all airport property acquired under that chapter is tax exempt regardless of its use, there would have been no need for the court to have measured the airline's use of property against the public purpose test of Walden.
Accordingly, we have no hesitation in accepting the trial judge's finding that the property in question is not being used exclusively for a public purpose or for a purpose integral to the operation of the airport.
A secondary point urged by Appellants is that even if the property actually being leased is subject to taxation, the county cannot tax that property which is only "held out for lease". The record reflects that the Authority has carved out certain portions of the airport and designated these areas as being available for lease. In effect, the Authority has created an industrial park at the airport. Many of the buildings within this area are leased. While the balance of the buildings are empty, the Authority is actively trying to find tenants for them. The lower court was correct in determining that by virtue of holding out this property for lease, the *231 City had changed its character to the extent that it became subject to taxation along with the properties which were actually under lease.
The judgment is affirmed.
HOBSON, A.C.J., and McNULTY, J., concur.
NOTES
[1] Section 196.25, Florida Statutes 1969, F.S.A.
[2] See, e.g., State v. Ocean Highway and Port Authority, Fla. 1968, 217 So.2d 103; State v. City of Tallahassee, 1940, 142 Fla. 476, 195 So. 402.